IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOSEPH B. HOOKS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) CIVIL ACTION NO.2:10cv268-WKW |
| KIM T. THOMAS [1] | ) (WO) |
| Commissioner, Alabama | ) |
| Department of Corrections. | ) |
| | ) |
| Respondent. | ) |
| | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Now before the court is Petitioner Joseph Hooks' Motion for Leave to Conduct Discovery (Doc. #29).  In this motion Petitioner requests that the Court issue an Order requiring the Respondent, the Commissioner of the Alabama Department of Corrections, to transport the Petitioner to an appropriate medical facility where modern brain imaging can be conducted pursuant to a protocol to be determined after consultation between the parties. Hooks claims that this testing is necessary to develop evidence in support of his claim that his execution is unconstitutional as cruel and unusual punishment due to the dysfunction in the frontal lobes of his brain.  Hooks is not requesting that the Court or State assume

---

[1] Pursuant to Rule 25 (d) (1) Federal Rules of Civil Procedure, Kim T. Thomas, Interim Commissioner of Alabama Department of Corrections, is automatically substituted in his official capacity as a party to this action.

responsibility for any costs associated with this testing.

Hooks argues that he is due the discovery for the following reasons (1) because the request is narrow and imposes little burden upon the State; (2) because he has good cause since (a) the discovery standards favor Petitioner; (b) the information is required to develop the claim; (c) Petitioner likely suffers from Frontal Lobe Dysfunction; (d) the testing sought will provide evidence of the extent and severity of Hooks' Frontal Lobe Dysfunction; and (3) because the discovery is necessary so that Hooks can respond fully to the State's procedural bar arguments.

In considering the Petitioner's requests for discovery the court is mindful of the United States Supreme Court's directive that "[a] habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997).  Rather, pursuant to Rule 6 of the RULES GOVERNING SECTION 2254 CASES in the United States District Courts, a petitioner must demonstrate "good cause" before a judge may authorize discovery.  "Good cause" is shown where petitioner (1) makes credible allegations of a constitutional violation and (2) the requested discovery will enable the petitioner to investigate and prove his claims.  *See, id.* at 908-909.  Furthermore, a petitioner must demonstrate that he used "due diligence" in state courts to obtain the discovery that he is seeking in a federal habeas corpus proceeding.  *See Isaacs v. Head,* 300 F.3d 1232, 1248-49 (11th Cir. 2002) where the court recognized that the 28 U.S.C. § 2254

(e)(2) due diligence requirement necessary for holding an evidentiary hearing applies equally to a claim for discovery. Due diligence means that "the prisoner made a reasonable attempt, in light of information available at the time, to investigate and pursue claims in state court." *Id.* Finally, to obtain discovery a petitioner must demonstrate that he can make a colorable claim showing that the underlying facts, if proven, constitute a constitutional violation. *Id.*

Hooks seeks this testing in order to establish his claim that his execution would be unconstitutionally cruel and unusual punishment under the recent U.S. Supreme Court precedents of *Roper v. Simmons,* 543 U.S. 551 (2005) (where the Court held juveniles under the age of 18 can not be executed) and *Graham v. Florida,* 130 S.Ct. 2011 (2010) (where the court held juveniles can not be sentenced to life without parole for non-homicide offenses). In so holding the Supreme Court recognized that it is unconstitutional to execute juveniles because they have "an underdeveloped sense of responsibility" due to the lack of full development of "parts of the brain involved in behavior control." *Id.* at 130 S. Ct. at 2026 citing *Roper*, *supra,* at 569-70. The Respondent does not address any of Petitioner's arguments as to why the discovery is due, but rather argues that the motion for discovery is moot because his frontal lobe dysfunction cruel and unusual punishment claim is procedurally defaulted. *See, Walker v. U.S.,* 2010 WL 55472, 23 (S.D. Ga. 2010) (dismissing discovery motion as moot because claim for which discovery is sought is procedurally defaulted).

Indeed, if Hooks' claim is procedurally defaulted from this court's review, this Court could not conclude that Hooks has demonstrated "good cause" for the requested discovery because that standard requires Hooks to present a credible claim of a constitutional violation, *see Bracy, id,* at 908-909. While the undersigned Magistrate Judge has authority pursuant to 28 U.S.C. § 636(b)(1)(A) to determine motions seeking discovery, the Magistrate Judge's authority to determine whether a claim is procedurally defaulted arises from 28 U.S.C. § 636(b)(1)(B) under which the Magistrate Judge may only recommend to the court the proper disposition of the issue. Given that the question of procedural default determines whether to allow the discovery which Hooks seeks, the Magistrate Judge concludes that it is appropriate to recommend to the court the disposition of the discovery motion.

A. Procedural Default

Hooks admits this claim is procedurally defaulted, but argues that cause and prejudice exist to save this claim from the default. The Eleventh Circuit has explained when a court may consider a defaulted claim:

> Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice. *See Murray v. Carrier,* 477 U.S. 478, 485-86, 495-96, 106 S. Ct. 2639, 2644, 2649, 91 L.Ed.2d 397 (1986); *Bailey,* 172 F. 3d at 1306. Maples argues that, even if they are procedurally defaulted, his ineffective-assistance claims should be heard by the federal court because he has demonstrated cause for prejudice from the default. Cause is established if "some objective factor external to the defense impeded counsel's efforts to comply with the States's procedural rule." *Murray,* 477 U.S. at 488, 109 S.Ct.

>At 2645. "Such external impediments include evidence that could not reasonably have been discovered in time to comply with the rule; interference by state officials that made compliance impossible; and ineffective assistance of counsel at a stage where the petitioner had a right to counsel." *Mize,* 532 F. 3d at 1190 (citing *Murray,* 477 U.S. at 488, 106 S. Ct. At 2645).

*Maples v. Allen,* 586 F. 3d 879, 890 (11th Cir. 2009).

Of course, the respondent bears the burden of establishing that a procedural default has occurred. Given Hooks' concession that his Eighth Amendment claim is defaulted, he now bears the burden of demonstrating both cause and prejudice to save the claim from a procedural default. *See Gordon v. Nagle,* 2 F. 3d 385, 388 n. 4 (11th Cir. 1993).

1. Cause

Hooks argues that cause exists for the procedural default because "the legal and factual basis underlying Mr. Hooks frontal lobe dysfunction claim were not previously available at a time when they could have been presented to the State court." ( *See,* Petition, Doc. # 1 at p 34).[2] With respect to the factual basis of his claim, Hooks argues that the science linking frontal lobe dysfunction to antisocial behavior had not yet been fully developed or been accepted by the scientific community or the courts. Hooks identifies a number of scientific imaging technologies which could be used to provide evidence to support his claim, including an fMRI, which Hooks labels "a more modern imaging

---

[2] Hooks' petition for post-conviction relief was filed on August 18, 1989 and was pending until June 27, 2005 when the trial court dismissed Hooks' Rule 32 Petition.

technique" and requests that this court allow him to utilize this procedure. (*See,* Hooks' Reply Brief, Doc. # 41 at pp. 10-11).

While Hooks states a clear preference for the fMRI technology, he does recognize that a PET scan could also provide relevant information about his brain function.. (*See,* Petition at ¶¶ 142-143). It is not clear to the court (and the parties do not provide any evidence about) how long the fMRI technology has been available; however, Hooks' own exhibits demonstrate that the PET technology has been available since "the late 1980s". (*See,* Ex.1 to Hooks' Brief in Support of his Motion for Discovery, Doc. # 31-1 *Brain Abnormalities in Antisocial Individuals* published in *Behav. Sci. Law* 26: 65-83 (2008) at p.130). Moreover, the Respondent cites the court to several cases where PET scan evidence was utilized as early as the 1990s. *See, Hose v. Chicago Northwestern Transp. Co.,* 70 F.3d 968, 973 (8th Cir. 1995)("[T]he PET scan is scientifically reliable for measuring brain function."). *See, also, U.S. v. Mezvinsky,* 206 F. Supp. 2d 661, 662-3 (E.D.Pa. 2002) (claim that "defendant has frontal lobe organic brain damage which was revealed in Positron Emission Tomography Scan (PET) conducted on November 9, 2001."). *See, also, Davis v. State,* 742 So. 2d 233, 236-237 (Fla. 1999)( post conviction claim of "newly discovered evidence" based on PET scan procedurally barred because PET scans "have been around for over two years."). Accordingly, the court concludes that accepted scientific methods which could be used to develop a cruel and unusual punishment claim based upon allegations of frontal lobe

dysfunction were available during the time Hooks' action was pending in state court.

Hooks also argues that the legal basis for his claim was not previously available to him while his action was pending in state court. Hooks relies on the constitutional principles established in *Roper v. Simmons,* 543 U.S. 551 (2005) where the Supreme Court held that juveniles under the age of 18 can not be executed and *Graham v. Florida,* 130 S.Ct. 2011 (2010) which extended the rule in *Roper* to include prohibiting sentencing juveniles to life without parole for non-homicide offenses as support for his claim that the legal basis for his claim was not available during the pendency of his state court action. Neither *Roper* nor *Graham*, however, directly address the claim presented here; that is, whether the Eighth Amendment forbids the execution of petitioner because "he suffers from a frontal lobe dysfunction in his brain which made him biologically unable to exercise the kind of judgment and impulse control of a normal adult when the crimes were committed." (Doc. #41, Petitioner's Reply Brief at p. 1).

Rather, in both *Roper* and *Graham* the Supreme Court used "categorical rules to define Eighth Amendment standards" and announced two bright line rules – (1) that juveniles under the age of 18 cannot be executed and (2) that juveniles cannot be sentenced to life without parole for non-homicide offenses. Drawing another bright line rule, the Court in *Atkins v. Virginia,* 536 U.S. 304 (2002), prohibited the death penalty for defendants "whose intellectual functioning is in a low range." *Graham, id,* at 2022, 2034.

> The *Graham* Court explained that
>
> [i]n the cases adopting categorical rules the Court has taken the following approach. The Court first considers "objective indicia of society's standards, as expressed in legislative enactments and state practice" to determine whether there is a national consensus against the sentencing practice at issue. *Roper, supra,* at 572, 125 S.Ct.1183. Next, guided by "the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning and purpose, *Kennedy,* 554 U.S. at —, 128 S.Ct. at 2650, the Court must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution. *Roper, supra,* at 572, 125 S.Ct. 1183.

*Id.* at 2022.

It is undisputed that the Supreme Court has not yet ruled on the issue of whether scientifically proven frontal lobe impairment of a certain severity in an adult would make the death penalty unconstitutional in such cases. Moreover, Hooks fails to point the court to any legislative enactment or state law practice through which this court can conclude that there is a national consensus against the execution of an adult with such a frontal lobe impairment. *Id.*

However, Hooks argues that he can demonstrate cause for the default because his claim was so "novel" that its legal basis was not "reasonably available" during the time his action was pending in state court. *Ross v. Reed,* 468 U.S. 1, 16 (1984). Hooks asks this court to conclude that *Roper,* decided in 2005 and *Graham,* decided in 2010, set forth the "evolving legal framework for assessing constitutional claims of cruel and unusual punishment" and to recognize a "biological basis in the lack of development or dysfunction

of the frontal lobe of the brain" through which Hooks can now potentially establish his Eighth Amendment claim. Therefore, Hooks argues, he has demonstrated cause for the procedural default of this claim. (Petitioner's Reply Brief, Doc. #41 at p.6-7).

The Eleventh Circuit has examined the question of when a judicial decision can serve as cause for a Petitioner's failure to raise a claim in state court. *See Hargrave v. Dugger,* 832 F. 2d 1528 (11th Cir. 1988) *cert. denied* 489 U.S. 1071 (1987)(where the court held that Petitioner, who was sentenced to death in 1975, had cause for failure to raise a claim in state court alleging exclusion of a non-statutory mitigating circumstance under *Lockett v. Ohio,* 438 U.S. 586 (1978)). In so holding the *Hargrave* court stated

> [i]n *Reed v. Ross,* . . . the Supreme Court held "that where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with acceptable state procedures." In order to establish the novelty of a constitutional claim sufficient to provide cause, a defendant must initially demonstrate that his situation is one where a court has "articulated a constitutional principle that has not been previously recognized but which has been held to have retroactive application." . . . "A new retroactive decision must be a sufficiently "clear break with the past", so that an attorney representing the defendant would not reasonably have had the tools for presenting the claim in the state courts."

832 F. 2d at 1530-31.

Both *Hargrave* and *Reed* are distinguishable from the instant action for the simple reason that in both of those cases there was a decision of the United States Supreme Court which addressed the precise claim for which petitioner was seeking to establish cause for his

failure to raise it earlier in state court and that decision came after conclusion of petitioner's state court action.  Here Hooks seeks to establish the novelty of his Eighth Amendment claim that it is cruel and unusual punishment to execute an adult with frontal lobe impairment of the brain by pointing to two Supreme Court decisions addressing claims that the Eighth Amendment prohibits the execution of juveniles and prohibits life without parole sentences for juveniles who commit property crimes.  These claims are not the same claim for which Hooks seeks to establish cause to save his procedural default.[3] Thus, even reading both *Roper* and *Graham* in the light most favorable to Hooks, the court concludes that Hooks has failed to point this court to a "constitutional principle that has not been previously recognized  but which has been held to have retroactive application".  *Hargrave, id.*  Accordingly, the court concludes that Hooks fails to demonstrate cause sufficient to save his claim from a procedural default.

    2. Prejudice

Because the petitioner bears the burden of demonstrating *both* cause *and* prejudice to save the claim from a procedural default, *see Gordon,* 2 F. 3d 385, 388 n. 4, and this court has concluded Hooks has failed to establish cause, the court need not address Hooks prejudice arguments. Nonetheless, the court chooses to address Hooks' argument that he will

---

[3] *Roper, Graham* and *Atkins* all adopt a categorical approach restricting their prohibitions to persons under the age of 18 or who are mentally retarded.  Hooks does not demonstrate the frontal lobe dysfunction is amenable to a categorical approach in the same way.

suffer prejudice if he is not allowed to present his claim of frontal lobe dysfunction. Specifically, he argues that "[t]he evolving constitutional limitations on imposition of the death penalty represented by the *Roper* and *Graham* cases demonstrate that Mr. Hooks' claim that it would be unconstitutional to execute him because of his frontal lobe dysfunction is strong." Hooks points to the *Hargrave* decision where the Eleventh Circuit found prejudice would occur if petitioner were not allowed to bring an Eighth Amendment claim in the wake of a Supreme Court opinion which was a clear break with prior precedent. (*See,* Petitioner's Brief in Support of Discovery, Doc. #30, p. 15).

      This contention is merely a restatement of Hooks' cause argument which this court has now rejected. Indeed, as this court has previously concluded, *Hargrave* is not applicable to the instant action because unlike *Hargrave* this court is not presented with a new Supreme Court opinion which addresses the issue presented by Hooks and which makes a clear break with prior precedent. Accordingly, Hooks fails to demonstrate prejudice, as well, and the court concludes that Hooks' Eighth Amendment claim based upon his alleged frontal lobe dysfunction is procedurally defaulted from this court's review.

    B. Fundamental Miscarriage of Justice

    Hooks argues cursorily that he meets the miscarriage of justice exception to the rule of procedural default because the brain imaging he seeks "could also help establish that, like juveniles, the judgment and control areas of Petitioner's brain are so dysfunctional that it

would be unconstitutional to execute him." (Petitioner's Brief, Doc # 30 at p. 16). Again the court views this argument as a mere restatement of Hook's position on cause premised on the law of *Roper* and *Graham,* which this court has concluded is not applicable to the instant action.

The miscarriage of justice exception applies where a petitioner shows that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To meet this standard a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt. *Schlup v. Delo*, 513 U.S. 298 at 326. (1995). *Schlup* observes that

> a substantial claim that constitutional error has caused the conviction of an innocent person is *extremely rare* . . . To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial.

*Id*. at 322. (Emphasis added). Hooks' mere restatement of his cause argument fails to meet the exacting standard of the miscarriage of justice exception.

Accordingly it is the RECOMMENDATION of the Magistrate Judge that Hooks' motion for discovery be DENIED.

It is further

ORDERED that the parties shall file any objections to this Recommendation **on or**

**before July 15, 2011**. A party must specifically identify the findings in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's proposed findings and recommendations shall bar a party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

Done this 1st day of July, 2011.

                                               /s/Charles S. Coody
                                               CHARLES S. COODY
                                               UNITED STATES MAGISTRATE JUDGE