IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOSEPH B. HOOKS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) |
| | ) CASE NO. 2:10-CV-268-WKW |
| KIM T. THOMAS, | ) |
| Commissioner, Alabama | ) |
| Department of Corrections, | ) |
| | ) |
| Respondent. | ) |
| | ) |

**MEMORANDUM OPINION**

Before the court are the Recommendation of the Magistrate Judge (Doc. # 44) and Petitioner Joseph B. Hooks's Objections (Doc. # 50).[1] On September 30, 2011, after conducting a *de novo* review, *see* 28 U.S.C. § 636(b), the court entered an Order overruling the Objections and adopting the Recommendation. (Doc. # 53.) The purpose of this Memorandum Opinion is to provide the reasoning for that Order.

**I. BACKGROUND**

In 1985, Mr. Hooks was convicted in the Circuit Court of Montgomery County, Alabama, of murdering Donald Bergquist and Hannelore Bergquist during the course of robbery, and was sentenced to death. At the time of the murders, Mr. Hooks was

---

[1] Respondent filed a response to the Objections on August 19, 2011 (Doc. # 51), and Mr. Hooks filed a reply brief on September 2, 2011 (Doc. # 52).

in his early thirties.  Mr. Hooks filed the instant action in March 2010, less than a year after the conclusion of his state post-conviction proceedings, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (*See* Doc. # 10 ¶¶ 18-26 (Am. Pet.).)

The issue is whether in his July 1, 2011 Recommendation (Doc. # 44), the Magistrate Judge erred in recommending the denial of Mr. Hooks's Motion for Discovery (Doc. # 29).  In that motion, Mr. Hooks requests permission to obtain modern brain imaging at his own expense to prove his Eighth Amendment claim that he suffered from frontal lobe dysfunction at the time of the murders and that, therefore, his execution would constitute cruel and unusual punishment.  (Doc. # 29.)

In his Recommendation, the Magistrate Judge concluded that Mr. Hooks could not show good cause for the requested discovery under Rule 6 of the Rules Governing Section 2254 Cases and *Bracy v. Gramley*, 520 U.S. 899 (1997), because his Eighth Amendment claim was procedurally defaulted, and neither cause and prejudice nor a fundamental miscarriage of justice excused the procedural default.[2]  As to cause, the Magistrate Judge rejected Mr. Hooks's argument that the legal and factual bases of his claim were not reasonably available at the time of the default.  (Doc. # 44,

---

[2] There is no dispute that Mr. Hooks did not present his Eighth Amendment claim to the Alabama courts.  Therefore, this claim is procedurally defaulted for purposes of habeas corpus review, absent a showing of cause and prejudice, or "that a 'failure to consider the claims will result in a fundamental miscarriage of justice.'" *Spencer v. Sec'y, Dep't of Corr.*, 609 F.3d 1170, 1179-80 (11th Cir. 2010) (quoting *Muhammad v. Sec'y, Dep't of Corr.*, 554 F.3d 949, 957 (11th Cir. 2009)).

at 5-10.)  The Magistrate Judge determined that the factual basis existed for Mr. Hooks to make his claim during the pendency of his action in state court because "accepted scientific methods," such as a Positron Emission Tomography ("PET") scan, were available for measuring brain function, even if the fMRI technology preferred by Mr. Hooks were not available.  (Doc. # 44, at 6-7.)

The Magistrate Judge also rejected Mr. Hooks's argument that his claim is so novel that its legal basis was not reasonably available until *Roper v. Simmons*, 543 U.S. 551 (2005), and *Graham v. Florida*, 130 S. Ct. 2011 (2010).  (Doc. # 44, at 7-10.)  Concluding that Mr. Hooks could not demonstrate cause, the Magistrate Judge emphasized that "[n]either *Roper* nor *Graham* . . . directly address[ed] the claim presented here; that is, whether the Eighth Amendment forbids the execution of [Mr. Hooks] because he 'suffers from a frontal lobe dysfunction in his brain which made him biologically unable to exercise the kind of judgment and impulse control of a normal adult when the crimes were committed.'"  (Doc. # 44, at 11 (citation omitted).)  Finally, the Magistrate Judge found that Mr. Hooks could not "meet the exacting standard of the miscarriage of justice exception" because Mr. Hooks's argument is "a mere restatement" of his position on cause.  (Doc. # 44, at 12.)

## II. DISCUSSION

Mr. Hooks's objections can be divided into four categories.[3] First, he argues that the Magistrate Judge erred in finding that he could not establish prejudice for the procedural default. (Doc. # 50, at 18.) "To establish 'prejudice,' a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different." *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). Mr. Hooks contends that the Supreme Court's decisions in *Roper* and *Graham* establish an "evolution in Eighth Amendment jurisprudence [that] creates a reasonable probability that [Mr. Hooks] will be able to show that it is unconstitutional to impose the death penalty on a person whose brain is dysfunctional in a way that it is similar to a juvenile such that he also lacks the capacity to make reasoned judgments." (Doc. # 50, at 8; *see also* Doc. # 50, at 18-19 (arguing that *Roper* and *Graham* "demonstrate[ ] that the evolving constitutional limitations on imposition of the death penalty show that his claim that it would be unconstitutional to execute him for conduct that was the result of frontal lobe dysfunction is strong")). Although at the time of the crime in November 1984, Mr. Hooks was in his early thirties, he argues that his brain functions "like a juvenile" because of his alleged frontal lobe

---

[3] All of Mr. Hooks's arguments have been carefully considered. His arguments not expressly addressed in this Memorandum Opinion are rejected.

dysfunction (Doc. # 50, at 3; Doc. # 10, at 32), and that *Roper* and *Graham* provide a foundation "to argue that a categorical rule against imposition of the death penalty should be applied to non-juveniles who suffer from frontal lobe dysfunction that makes them less culpable in the same way as juveniles." (Doc. # 50, at 16.) Mr. Hooks contends that, if he "can obtain brain imaging evidence of his frontal lobe dysfunction, he will be able to demonstrate how he is suffering prejudice from a procedural default." (Doc. # 50, at 8.) The court disagrees.

*Roper* held that executing juveniles who were under the age of eighteen at the time of the offense violates the Eighth and Fourteenth Amendments, *see* 543 U.S. at 578, and *Graham* held that sentences of life without parole are unconstitutional for juvenile offenders who have not committed homicides, *see* 130 S. Ct. at 2034. It is true that these cases relied, to some extent, on psychological and neurological attributes of juveniles that differentiate them from adults. *See, e.g.*, *Graham*, 130 S. Ct. at 2026 (observing that "developments in psychology and brain science continue to show fundamental differences between juvenile and adult minds," and that "[f]or example, parts of the brain involved in behavior control continue to mature through late adolescence"); *Roper*, 543 U.S. at 570 (noting the "character of a juvenile is not as well formed as that of an adult" and the "susceptibility of juveniles to immature and irresponsible behavior").

However, neither *Roper* nor *Graham* held that the Eighth Amendment's ban on cruel and unusual punishments prohibits the execution of adults with frontal lobe dysfunction, and Mr. Hooks points to no authority – and none has been found – that supports such an expansive reading of *Roper* and *Graham*. The factual and legal link between Mr. Hooks's Eighth Amendment claim and the claims at issue in *Roper* and *Graham* simply is too tenuous to establish a new constitutional claim applicable to adult offenders who allege that they suffered from frontal lobe dysfunction at the time of the crimes. (Doc. # 51, at 5.) Mr. Hooks's attempt to extract an Eighth Amendment claim that execution of adults with frontal lobe dysfunction is unconstitutional from *Roper* and *Graham* impermissibly stretches those holdings beyond their present limits. The court cannot make that substantial leap.

Moreover, in both *Roper* and *Graham*, there was a discernable national consensus to show that evolving standards of decency required a constitutional ban against executing offenders who were under the age of eighteen when the murders were committed, and against sentencing juveniles to life sentences without parole for the commission of non-homicide cases. The Magistrate Judge correctly observed that Mr. Hooks has not pointed to any legislative enactment or state practice evidencing a national consensus sufficient to show that evolving standards require a constitutional ban against the "execution of an adult with such a frontal lobe

impairment." (Doc. # 44, at 8.) Contrary to his urging, Mr. Hooks has not demonstrated that his claim "would definitely change the result of the proceedings, by eliminating the death penalty as a sentence." (Doc. # 50, at 19.) Accordingly, Mr. Hooks has not shown prejudice from his counsel's failure to raise the Eighth Amendment claim during the state court proceedings.

Second, Mr. Hooks argues that the factual and legal bases for his Eighth Amendment claim were not reasonably available until *Roper* and *Graham* and that, therefore, he demonstrates cause for his failure to raise his claim during the pendency of his state court proceedings.[4] He contends that it was not until 2005 at the earliest that the scientific community accepted (and the Supreme Court in *Roper* recognized) that frontal lobe dysfunction could be the biological basis for specific abnormal behaviors. (Doc. # 50, at 10; *see also* Doc. # 30, at 14.)

---

[4] This argument relies upon the narrow novelty rule for establishing cause. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Reed v. Ross*, 468 U.S. 1, 16 (1984). "To show cause, the petitioner must demonstrate 'some objective factor external to the defense' that impeded his effort to raise the claim properly in state court." *Ward v. Hall*, 592 F.3d 1144, 1157 (11th Cir. 2010) (quoting *Murray*, 477 U.S. at 488). "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel" is an external factor that can constitute cause. *Murray*, 477 U.S. at 488 (citing *Reed*, 468 U.S. at 16). For example, a showing that "a constitutional claim is so novel that its legal basis [was] not reasonably available to counsel" would constitute cause under this standard. *Reed*, 468 U.S. at 17; *accord Hargrave v. Dugger*, 832 F.2d 1528 (11th Cir. 1987). It should be noted that in subsequent Supreme Court decisions, *Reed* has not been expanded; it only has been narrowed. *See, e.g., Bousley v. United States*, 523 U.S. 614, 622 (1998).

No doubt, *Roper* "was a significant change in law" (Doc. # 50, at 6), and the holdings of *Roper* and *Graham* were unavailable to Mr. Hooks during his state court habeas proceedings. However, for the reasons discussed above, *Roper* and *Graham* are too factually and legally distinct to provide a reasoned and principled foundation for the Eighth Amendment claim Mr. Hooks attempts to bring in this action. Absent any other authority from Mr. Hooks, the Magistrate Judge did not err in rejecting his reliance on *Reed*'s novelty rule for demonstrating cause.

Third, Mr. Hooks contends that he is entitled to discovery on modern brain imaging to demonstrate that his procedural default is excusable for cause and prejudice and, thus, the Magistrate Judge ruled prematurely on the question of procedural default. (*See* Doc. # 50, at 1; *see also* Doc. # 50, at 8 ("The Magistrate Judge should decide the pending discovery motion without reaching the procedural default issues.").) None of the cases cited by Mr. Hooks found that a habeas petitioner was entitled to discovery as a matter of right to attempt to overcome procedural default. This is not surprising because "Rule 6(a) makes it clear that the scope and extent of such discovery is a matter confided to the discretion of the District Court." *Bracy*, 520 U.S. at 909; *see also id.* at 904 ("A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course."); *Williams v. Bagley*, 380 F.3d 932, 974-76 (6th Cir. 2004)

(holding that district court did not abuse its discretion in denying discovery requests because the habeas petitioner had procedurally defaulted the claim); *Smith v. Warden, Toledo Corr. Facility*, No. 3:10cv367, 2011 WL 4337092, at *4 (S.D. Ohio July 18, 2011) (denying as moot a motion for discovery under Rule 6(a) "because Petitioner . . . procedurally defaulted his claims").

A court acts within its discretion in denying discovery under Rule 6(a) when there is no "reason to believe" that the petitioner "may . . . be able to overcome procedural default" with further factual development. *Bracy*, 520 U.S. at 908-09; *see Bartelli v. Wynder*, No. 04-3817, 2010 WL 5904395, at *15 (E.D. Pa. Nov. 30, 2010) ("Generally, discovery requests relating to procedurally defaulted claims are properly denied because discovery would not lead to a basis for relief on the claims."); *Simmons v. Simpson*, No. 3:07cv313-S, 2009 WL 4927679, at *10 (W.D. Ky. Feb. 12, 2009) ("[I]f the claim actually is procedurally defaulted, and if cause and prejudice for the alleged default cannot be established by the requested discovery, then [the petitioner] will not be able to satisfy the good cause test of Rule 6."); *United States v. Atkin*, 80 F. Supp. 2d 779, 786 (N.D. Ohio 2000) (Good cause for discovery was not established where "even if the facts regarding [the petitioner's] . . . allegation were fully developed [the petitioner's] procedural default would bar relief."). As discussed above, Mr. Hooks cannot show prejudice as a matter of law because the

9

contours of his Eighth Amendment claim lack sufficient legal support.[5] Hence, allowing discovery to discern facts as to whether he actually suffered from frontal lobe dysfunction at the time of the murders would not help him overcome the prejudice prong of procedural default. Accordingly, the Magistrate Judge did not err in finding Mr. Hooks's Eighth Amendment claim procedurally defaulted, without providing him the benefit of discovery.

Fourth, Mr. Hooks argues that the Magistrate Judge should have evaluated the exception to procedural default for fundamental miscarriages of justice under *Sawyer v. Whitley*, 505 U.S. 333 (1992). (*See* Doc. # 50, at 19-20); *see also Sawyer*, 505 U.S. at 336 (holding that "to show 'actual innocence' one must show by clear and convincing evidence that, but for a constitutional error, no reasonable juror would have found the petitioner eligible for the death penalty under the applicable state law"). To the extent that the Magistrate Judge did not consider *Sawyer*, this court finds that, for reasons already stated, Mr. Hooks has not shown that the failure to reach the merits of his claim would result in a fundamental miscarriage of justice.

---

[5] Also, absent in Mr. Hooks's brief is any argument or discussion of how the requested discovery would help him demonstrate cause to excuse the procedural default. (*See* Doc. # 50, at 6-8.)

## III.  CONCLUSION

Mr. Hooks has not demonstrated cause for his failure to raise his claim during the state court proceedings that he suffered from frontal lobe dysfunction so as to render his execution unconstitutional under the Eighth Amendment and has failed to show prejudice stemming from that failure.  He also has not shown that a failure to hear his claim would result in a fundamental miscarriage of justice.  Hence, the Magistrate Judge correctly found that his claim that his execution would be unconstitutional based on his alleged frontal lobe dysfunction is barred by procedural default.  Furthermore, the Magistrate Judge did not err in deciding the procedural default issue, without permitting Mr. Hooks to conduct modern brain imaging discovery.  Accordingly, the Magistrate Judge was correct in recommending the denial of the Motion for Discovery.

DONE this 17th day of October, 2011.

        /s/ W.  Keith Watkins
    CHIEF UNITED STATES DISTRICT JUDGE